Our fourth case for argument this morning is United States v. Barbee. We're ready now in United States v. Barbee. Mr. Meyer. Good morning. May it please the Court. Christopher Barbee asks this Court to reverse the District Court's order denying his motion for compassionate release and to remand for further proceedings. He makes this request because the District Court's one-sentence order denying his motion for compassionate release didn't fulfill the requirement that it reasonably assured this Court that the District Court had considered Mr. Barbee's principal arguments. Mr. Meyer, how so? How so? Because if you look at the 3553 analysis from the District Court, you make a big deal about the fact that we should be able to review the District Court's analysis and the District Court's position. But the District Court's position is very clear here. The aggravating factors involving the defendant, particularly his extensive criminal history and the nature of the offense, which I can look at and which the District Court already articulated on when the District Court sentenced Mr. Barbee, what the District Court is saying is his criminal history and the nature and seriousness of his offense has not changed since the time I sentenced him. Why should the District Court have to go through a thorough analysis and repeat everything that it already found, particularly with respect to those factors? Judge, we're certainly, we recognize that the District Court doesn't have to go through a thorough analysis or repeat everything that it said at the sentencing hearing when it sentenced Mr. Barbee. However, there's been a change. There's been an intervening time between the time that the District Court sentenced Mr. Barbee and today. And part of that intervening change has been the extraordinary and compelling circumstances of the pandemic. Well, that's not an issue, though, in that appeal, in this appeal, because we can just, we're not reviewing anything there, right? At least the District Court can decide this either on one prong or both prongs if it would like. And at least it seems to me that it did not decide this on the, whether or not there's a compelling reason for compassionate release. It seems to me that the District Court says, even if there is, the 3553 factors, the nature and seriousness of his offense, his criminal history, and the fact that he served only a small portion of his sentence, outweigh all of the mitigating factors offered by the defendant. Why do we even have to take up the compelling and compelling reasons for release? Well, in a similar context, in the United States v. Marion, in a motion for a sentence reduction brought under Section 3582C2 based on a sentencing guidelines change, this court held that those, looking at those changes are necessary. And even if it's, even if it's the court saying, I have reviewed the things that happened at the sentencing hearing, and in light of what's happened in the meantime, and I don't think… That's what he said, he just said it a different way. At least I think, I don't mean to be arguing with you, but it seems to me that he said, I've considered the things that haven't changed, the nature and seriousness of the offense, the criminal history, the fact that he served a small portion of his sentence, and they all outweigh the mitigating factors cited by Mr. Barbie in his compassionate release motion, and that's the end of it. It seems like you and I are saying the same thing. I don't think we're saying exactly the same thing, Judge. I think it's necessary for the district court to undergo some analysis of how the circumstances that have changed weigh against what was existing at the time of the sentencing hearing, and I don't believe that district court's one sentence order was sufficient to do that. Would it have been enough if he had listed the mitigating factors cited by Mr. Barbie? I don't know if it would be enough that he listed them, but I think he needs to address them in some fashion, other than saying… He did. I disagree, Judge. I appreciate that, I respect that. Thank you. I have a question of fact. Has Barbie been vaccinated against COVID-19? Yes, Judge. I spoke with him and he confirmed to me that he had received the second dose of the Moderna vaccine on the 8th of this month. And I gather that the court is looking for me to address the Broadfield decision, which I would like to do. We are 18 months into a pandemic where one of the only consistent things has been change. Science has continually been changing regarding what the nature of the virus is and the steps that we need to take in order to mitigate transmission and protect ourselves from the virus. And sometimes that change has occurred at a lightning pace. And so while I think it may have been reasonable to assume in July when the mass vaccinations were just taking hold… Are there any data suggesting that vaccinated federal prisoners are at unusually high risk of COVID-19? Well, I think there are two things that address that, Your Honor. The first is that shortly after the decision in Broadfield, CDC changed its recommendation regarding… I don't know that there's any data that shows that they are at extra risk. I can offer one data point, and that is a death that occurred in the Bureau of Prisons. If they are not at any greater risk than vaccinated persons in the general population, it's hard to see why a prisoner should be let out because that wouldn't reduce the risk. If there is to be a contention that compassionate release serves the goal of reducing an unnecessary risk of disease, at a minimum, there has to be some reason to think that a vaccinated person is safer in the general population than in the prison population. That's what I'm looking for. I think that's a correct statement, Judge. I believe the CDC guidance reinforcing the need for other mitigation strategies besides vaccines because vaccines do not fully protect against the virus. You're not listening to my question. This is a comparative judgment. What is the risk that a vaccinated prisoner faces in prison versus the risk that a vaccinated prisoner faces out of prison? Of course, vaccines are not fully effective. But in trying to figure out whether there's a reason to move a particular person from in prison to out of prison, we need to be able to make a comparative judgment of risk. And I haven't seen any data that would facilitate that comparative judgment. I'm wondering if you have. Judge, again, I turn to the CDC, and I turn to this court's decision in Newton. The Centers for Disease Control has never addressed that question. No, not directly, Judge. However. Not indirectly. In Newton, this court recognized that the general population versus incarcerated population question wasn't the appropriate comparison. In that decision, Mr. Newton had offered a specific plan for his release where he would not be, quote, unquote, in the general population. He was going to be living with two other people, which at the time, because of the social distancing and masking requirements, reduced his risk. And it is those same problems, the inability of prisoners to social distance and to mask and to prevent infection that are relevant here. And for those reasons, Mr. Barbee's plan that he put forward to the district court is just as applicable now after vaccines as it was prior to vaccines. And with that, I would like to reserve the rest of my time for rebuttal. Certainly, Mr. Meyer. Ms. Bonamici. You're mute. I saw that, Your Honor. I was trying to fix it. May it please the court, Deborah Bonamici on behalf of the United States. Good morning. Beginning where you left off in the last conversation, I would like to say that, like Your Honor, the government is not currently aware of any recent CDC guidance or any studies showing that vaccinated persons inside a prison setting are more at risk than vaccinated persons on the outside. In fact, the CDC is stressed. I must say I'm puzzled by that. The Bureau of Prisons is certainly in a good position to collect data like that. And, of course, before vaccination, there were very powerful data that prisoners were at greater risk than the general population. So one would expect the Bureau of Prisons to collect some data to see whether that's true after vaccination as well. Well, the data that they have collected and that's available on their website demonstrate that the infection numbers have dropped precipitously, apparently based on the vaccination program. The numbers have gone way down and that there have not been significant cases involving serious illness in large numbers across the nation. If Your Honor would like, we can inquire further and produce whatever additional investigations or studies that have been done since the time that our briefing was complete. But I'm not aware of anything that answers the direct question that Your Honor asked. And so we think that broad field does apply here and that there is, regardless of what is decided on the question before the court, there is no reason, no valid basis for reversal and remand here, because the defendant would not be able to obtain a better result upon reconsideration of this motion. That does not mean, though, that if circumstances did change dramatically, the defendant would be in any way precluded from bringing a second motion. There's no statutory limit to the number of motions that the defendants can bring under this provision, based on changed circumstances at least. And if circumstances did radically change, the defendant could bring a second motion, which the court would then review and consider based on those new circumstances. But speculation about what future circumstances might hold would not be a satisfactory basis upon which to grant relief at this time. You know, the explanation that was offered by the district court here is even thinner than the reasoning given by the district court in United States v. Newton. That one was sent back for the court to better explain its decision. I'm wondering if you could tell us how this is distinguishable. How can we know whether the court considered Barbee's principal arguments as required by Newton? I mean, I fully comprehend that, you know, that we can look at the original sentencing and, you know, combinate. And of course, this judge was the original sentencer. But how do we differentiate this one from Newton when, as I say, the explanation is even thinner? Well, the context of Newton was completely different, beginning with probably the most important point, which is the district court in Newton determined that the defendant had not established an extraordinary or compelling reason to consider a sentence reduction and also separately determined that the 3553A factor separately weighed against any kind of relief. This court has held that that second analysis isn't actually even necessary if the court reasonably finds that the defendant has not established an extraordinary or compelling reason for and compelling reason for even considering a reduction. What happened in Newton, I think, the court made clear, was that the district court included in its opinion some problematic statements that raised questions in the court's mind regarding the reasonableness of the court's extraordinary and compelling reason analysis. And that's completely different from the case here. In the case here, the court determined implicitly that the defendant had made the requisite showing of an extraordinary and compelling reason for at least considering a reduction and then went on, as it is supposed to do, to make a determination after applying the 3553A factors. And the court set forth three factors consistent with 3553A that justified its decision that relief was not warranted. Those factors were the seriousness of the offense, the extensive nature of the defendant's criminal history, and finally, the fact that the defendant had served only a small portion of the sentence that it had imposed. Ms. Monaghan, could I ask you, in Newton, as I recall Newton, and I may be misrecalling this case, but as I recall Newton, in that case, the district judge did not consider the 3553 factors. Is that correct? I think it was Black, where the United States was Black, where the judge considered the extraordinary and compelling reason and then the 3553 factors. I thought in Newton, Judge Bucklow just considered the extraordinary and compelling reasons and the majority in that case holds because the factors were not considered in combination, the medical conditions were not considered in combination, that it had to be sent back. But I thought that the district court in that case did not consider the 3553 factors. Judge, you're exactly right. I misremembered that case. I just went back and looked at the decision and you're exactly right. The problematic statements that the court, that were the basis of the court's determination, of this court's determination were made in the context of analyzing the court's determination that the defendant's medical condition did not constitute an extraordinary and compelling reason. But of course, that decision would, if the decision or the determination or the analysis of the court were found by this court to have been reasonable, it would not have been necessary for the court to have gone on to the 3553A factors. I think the court prophylactically discussed the rest of the analysis because it was going to go back, it was going to be remanded and the court could potentially make a different, reach a different conclusion with respect to whether the defendant had established an extraordinary and compelling reason for considering reduction. Here, we have a completely different situation. We have a judge who made a determination, whose determination on the record, while conceitedly brief, it does reflect the factors that it considered to be determinative under 3553A. And its analysis is completely, it's well supported by the record and it's completely consistent with the statutory factors. And so there's no basis for remand here. If the court has no further questions, the government would ask the court to affirm the court's decision in this case. Thank you, counsel. Anything further, Mr. Meyer? Just briefly, Judge, we believe that the correct comparison here is with United States v. Marion, and that there needs to be some explanation of the district court's decision in weighing the factors in the current context in light of the current extraordinary and compelling circumstances. And for that reason, we believe that the district court's one-sentence order is not sufficient to allow this court to reasonably assure itself that it had performed its duties. And so we ask the court to reverse and remand. Well, thank you very much. The case is taken under advisory.